IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NANCY STEGVILAS,                                  )
                                                  )
                    Plaintiff,                    )
                                                  )          No.   06 C 4573
         v.                                       )
                                                  )          Judge Robert W. Gettleman
EVERGREEN MOTORS, INC., d/b/a                     )
Evergreen Kia,                                    )
                                                  )
                    Defendant.                    )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Nancy Stegvilas has brought a seven count amended complaint against

defendant Evergreen Motors, Inc., alleging violations of the Equal Credit Opportunity Act

("ECOA"), 15 U.S.C. § 1691 et seq. (Count I); the Truth in Lending Act ("TILA") 15 U.S.C. §

1602 et seq. (Count II); the Illinois Consumer Fraud and Deceptive Practices Act ("CFA"), 815

ILCS 505/1 et seq. (Counts III and IV); defamation per se (Count V); breach of bailment (Count

VI); and willful and wanton conduct (Count VII).  Defendant has moved to dismiss all counts of

the amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For the

reasons set forth below the motion is granted in part and denied in part.[1]

## <u>FACTS</u>

On May 15, 2006, plaintiff went to defendant's dealership to purchase a new car.  She

selected a Kia Optima and applied for financing.  Plaintiff and defendant agreed that defendant

would take plaintiff's old Ford Tempo as a trade-in down payment and that plaintiff would drive

the new Kia Optima home while defendant obtained financing; a practice plaintiff describes as

---

[1]On May 9, 2007, the parties filed a Stipulation of Dismissal of the TILA claim.
Pursuant to that stipulation, Count II is dismissed with prejudice.

"spot delivery." The parties signed a sales contract that day, which provided for a $2,500 rebate for plaintiff. Plaintiff delivered her car to defendant contingent upon defendant finding financing for the purchase of the automobile.

The following day, prior to receiving an answer regarding her application for financing, plaintiff returned to defendant because the gas gauge on the new Kia Optima was not functioning properly. At that time plaintiff saw defendant vacuuming and cleaning her old Ford Tempo. That same day, defendant sold plaintiff's Tempo to a person named Michael Banks. Shortly after the purchase Banks was arrested for possession of marijuana while in the Tempo. The Tempo was impounded by the police. Several days thereafter, plaintiff returned to defendant to obtain a wireless remote control key that defendant has promised to install on the new Kia. When she arrived at the dealership, however, defendant demanded return of the Kia and tried to talk plaintiff into making a different loan and changed the terms of her application. At no time did defendant send any notice to plaintiff indicating that any loan application had been denied. Defendant also informed plaintiff that her trade-in had been impounded by the City of Chicago because it had been found to have drugs in it, and that defendant had been unable to secure financing for the May 15, 2006, transaction.

Although it had cleaned and vacuumed plaintiff's Tempo after receiving it, defendant nonetheless blamed plaintiff for the drugs found in the car and publicly called her a "drug dealer." Defendant then threatened to call the police and "report" plaintiff as a drug dealer if she did not surrender her new Kia and leave the premises. Plaintiff gave defendant's salesman the keys to the new car and requested return of her trade-in. Defendant did not return her trade-in, but instead told plaintiff that she would have to pay the impound charges and retrieve her vehicle

2

from the police. Plaintiff subsequently tried but was unable to retrieve the vehicle because defendant had the title and because it had already been sold to Michael Banks.

On June 1 or 2, 2006, after plaintiff had made several telephone calls to defendant, defendant towed the Tempo to plaintiff's residence and left it on the street. Defendant left the keys and the title to the car on plaintiff's front stoop. The car was in substantially worse condition than when plaintiff traded it in to defendant. The Tempo would not start, had spare tires, was dented and scratched, and had numbers carved into the finish. The trunk also had substantial water damage.

At the time the Tempo was impounded, the title was still in plaintiffs name. According to plaintiff, because of that the drugs are now linked to her vehicle and she has suffered embarrassment and damage to her reputation. She also received a citation from the Chicago Police even though she had nothing to do with the impoundment. Plaintiff has been forced to attend court three times to defend the citation.

## DISCUSSION

Defendant has moved to dismiss all counts of plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Such motions challenge the sufficiency of the complaint, not the merits, and should be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). As the Seventh Circuit has recently explained in a series of rulings, complaints need not allege facts corresponding to every "element" of a legal theory. That is a code pleading approach specifically reject by the Federal Rules of Civil Procedure. See e.g., McDonald v. Household International, Inc., 425 F.3d 424, 427 (7th Cir.

2005).  In federal court "one pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics."  Simpson v. Nickel, 450 F.3d 303, 305 (7th Cir. 2006). "Plaintiffs need not plead facts; they need not plead law; they plead claims for relief.  Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of."  Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005).

In Count I plaintiff alleges that defendant violated the ECOA by failing to send plaintiff notice that her application for a loan was denied.  Defendant argues that the count should be dismissed because it does not provide adequate notice of the claims asserted against defendant. In particular, defendant argues that the ECOA provides that it is unlawful for a creditor to discriminate against any applicant "(1) on the basis of race, color, religion, national origin, sex or marital status, or age . . .; (2) because all or part of the applicant's income derives from any public assistance programs; or (3) because the applicant has in good faith exercised any right under this chapter."  15 U.S.C. § 1691(a).  Defendant argues that because plaintiff makes no claim that she was discriminated against by defendant she has no claim under the ECOA. Defendant is wrong.

The ECOA was originally enacted in 1974 to prohibit discrimination in credit transactions.  Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 975 (7th Cir. 2004).  It was amended in 1976 to require creditors to furnish written notice of the specific reasons why an adverse action was taken against the consumer.  Id.; 15 U.S.C. §§ 1691(d)(2), (3).  Plaintiff has alleged that defendant was a creditor under the Act, and that she was denied credit and given no reason.  Defendant is certainly on notice of plaintiff's claim.  The complaint need do no more.  A "creditor" is "any person who regularly extends, renews or continues credit;

4

any person who regularly arranges for the extension, renewal, or continuation of credit . . . ." 15 U.S.C. § 1691(a)(e); see also 12 C.F.R. § 220.2(l). Under the plain language of the statute, the term "creditor" encompasses more than the entity that ultimately provides or refuses to provide credit. Often in this process, various entities act along a "continuum of participation in a credit decision from no participation to referring applicants to the decisionmaker, to the final decision making. At some point along the continuum, a party becomes a creditor for purposes of the notification requirements of the ECOA." Treadway, 360 F.3d at 980.[2]

Whether a car dealer such as defendant is a creditor is a fact specific question, and courts have set forth certain guidelines to aid in the determination: (1) whether the dealer sets the terms of the credit; (2) whether the dealer negotiates with the customer as to the payment terms; (3) whether the dealer receives proceeds from a portion of the interest rate; and (4) whether the dealer conducts an initial assessment of the customer's credit application to screen those that it determines not to send to a lender. Barnette v. Brook Road Inc., 457 F. Supp.2d 647, 655 (E.D. Va. 2006). Whether defendant qualifies as a creditor under the ECOA when these factors are applied to its actions is a question of fact that cannot be determined on a motion to dismiss. Plaintiff has alleged that defendant is a creditor and at this stage need do no more. Accordingly, defendant's motion to dismiss Count I is denied.

In Count III, plaintiff alleges that defendant violated § 2C of the CFA when defendant refused to return plaintiff's trade-in vehicle, which constituted a form of down payment. Additionally, plaintiff alleges that defendant violated that same section when it finally did return

---

[2]Because plaintiff does not allege discrimination, the definition of "creditor" that encompasses a person who refers applicants to a creditor, see 12 C.F.R. § 202.2(l), does not apply.

the trade-in in a substantially diminished condition.  Defendant has moved to dismiss the count

arguing that, (1) plaintiff makes no allegations that defendant engaged in any deceptive act or

practice because she admits that plaintiff returned the trade-in vehicle, and (2) the count fails to

comply with the requirements of Fed. R. Civ. P. 9(b) which requires plaintiffs to plead fraud

with particularity.

Section 2C of the CFA (815 ILCS 505/2C) provides:

If the furnishing of merchandise, whether under purchase order or contract of
sale, is conditioned on the consumer's providing credit references or having a
credit rating acceptable to the seller and the seller rejects the credit application of
that consumer, the seller must return to the consumer any down payment, whether
such down payment is in the form of money, goods, chattels or otherwise, made
under that purchase order or contract and may not retain any part thereof.   The
retention by the seller of part or all of the down payment whether such down
payment is in the form of money, goods, chattels or otherwise, under those
circumstances as a fee for investigating the credit of the consumer or in liquidated
damages to cover depreciation of the merchandise which was the subject of the
purchase order or contract or for any other purpose is an unlawful practice within
the meaning of this Act, whether that fee or those charges are claimed from the
down payment, whether such down payment is in the form of money, goods,
chattels or otherwise, are made as a separate charge to the consumer.

The statute specifically sets forth that retention of the down payment after rejection of the

credit application is an unlawful practice under the Act.  Plaintiff has alleged the specifics of her

claim under the Act, including the date when the return of the down payment was requested and

refused, and when the damaged vehicle was ultimately returned.  Defendant's argument that

plaintiff has no claim under § 2C of the Act  because it ultimately returned the vehicle has been

specifically rejected by the Illinois Appellate Court in Jones v. William Buick, Inc., 337

Ill.App.3d 339, 342-43 (1st Dist. 2003).  Accordingly, defendant's motion to dismiss Count III is

denied.

In Count IV plaintiff alleges that defendant engaged in deceptive and unfair acts and practices in violation of § 2 of the CFA by luring her to the dealership by falsely stating that she would receive a special "keyless entry" for her new Kia, when it really wanted to repossess the car. In addition, the count alleges that defendant engaged in deceptive and unfair acts when it overstated the finance charge in plaintiff's truth in lending papers, tried to strong-arm repossession of the car through defamatory name-calling and threatening to call the police, and by selling her trade-in vehicle used as a down payment before financing had been obtained in the "spot delivery" transaction. Defendant has moved to dismiss this count arguing that although the count makes the appropriate allegations of deception, it fails to plead fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b). The court agrees.

Rule 9(b) requires plaintiff to plead the circumstances constituting fraud. This generally requires the complainant to allege "the identity of the person making the representation, the time, the place, and content of the misrepresentation and the method by which the misrepresentation was communicated to the plaintiff. In other words the 'who, what, when, and where' of the alleged fraud." Uni * Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) (quoting Bankers Trust Co. v. Old Republic Insurance Co., 959 F.2d 677, 683 (7th Cir. 1992). In the instant case, Count IV makes a number of allegations regarding statements made and acts taken by defendant, but it is unclear when and by whom those acts and statements were made. Plaintiff does identify certain persons in her response brief, but it is the complaint that counts. Accordingly, the court concludes that Count IV fails to plead fraud with sufficient particularity. Defendant's motion to dismiss Count IV is granted. Plaintiff is given leave to file an amended Count IV conforming with this opinion.

In Count V, plaintiff alleges that defendant defamed her by publically accusing her of being a drug dealer.  In its motion to dismiss, defendant states that it "merely informed plaintiff of the fact that her trade-in vehicle had been impounded as a result of illegal drugs being found in the trade-in vehicle."  Because words used in an alleged defamatory statement must be understood to be given their natural and obvious meaning, see <u>John v. Tribune Co.</u>, 24 Ill.2d 437 (1962), defendant argues that what plaintiff claims to be defamatory per se is not actionable since it is reasonably susceptible to an innocent construction.  Defendant further argues that the alleged defamatory statements constitute non-actionable fact and are protected under the First Amendment because it is true that  illegal drugs were found in the trade-in vehicle and it was impounded.  Thus, according to defendant, its recitation of those facts cannot rise to the level of defamation.

The problem with defendant's argument is that it goes beyond the allegations of the complaint and, therefore, is better suited for a motion for summary judgment under Fed. R. Civ. P. 56.  Plaintiff has alleged that the defendant called her a drug dealer, not that drugs were found in her car.  That is a statement that imputes the commission of a criminal offense and is defamatory per se.  <u>Van Horn v. Muller</u>, 185 Ill.2d 299, 308 (1998).  It certainly is not subject to any innocent construction.  Accordingly, defendant's motion to dismiss Count V is denied.

In Count VI, plaintiff alleges that defendant's acceptance of the trade-in vehicle contingent upon defendant finding financing amounts to a bailment.  Plaintiff alleges that defendant breached that bailment by permitting the vehicle to be sold to a third party, failing to redeliver plaintiff's vehicle in a timely manner, redelivering the vehicle in a manner that the vehicle was likely to be stolen or damaged and redelivering the vehicle in a damaged condition.

8

Defendant has moved to dismiss the claim arguing that because plaintiff admits that the defendant ultimately returned the vehicle and that in her responses to discovery admits that she resold the vehicle for $400, the count fails to state a claim.

Once again, defendant's motion argues facts outside of the pleadings which are more appropriately presented in a motion for summary judgment. As stated, the count sets forth plaintiff's grievance and theory. That is all that it need do, and defendant's motion to dismiss Count VI is denied.

Finally, In Count VII plaintiff alleges that defendant acted in a willful and wanton manner. Illinois does not recognize an independent tort of willful and wanton misconduct. Munez v. Rex Nord Corp., 2006 WL 1430553 at *2 (N.D. Ill. 2006). Plaintiffs can recover punitive damages, however, based on willful and wanton misconduct if the willful and wanton allegations are incorporated as part of a separate count containing a recognized tort. Accordingly, the court grants defendant's motion to dismiss Count VII and grants plaintiff leave to amend Count VII or another count consistent with this order.

## CONCLUSION

For the reasons set forth above defendant's motion to dismiss is denied as to Counts I, III, V, and VI, and granted as to Counts IV and VII. Plaintiff is given leave to file an amended complaint consistent with this order on or before June 1, 2007. Defendant shall file its answer to all counts on or before June 22, 2007. The parties are directed to prepare and file a joint status report using the court's form on or before June 25, 2007. This matter is set for a report on status on June 28, 2007, at 9:00 a.m.

**ENTER:**     **May 11, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**